# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | Criminal Action No. 4:06-cr-00315-1 |
| v. | § | Judge Mazzant |
| | § | |
| HOWARD LUIS PEREZ, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Reduction in Sentence (Dkt. #501). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On January 10, 2007, the Grand Jury for the Eastern District of Texas, Sherman Division returned a seven-count Superseding Indictment, which included a forfeiture notice, against Howard Luis Perez and eleven (11) co-defendants (Dkt. #94). Count One charged Defendant with Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine, in violation of 21 U.S.C. § 846 (Dkt. #94 at pp. 1–2). Count Two charged Defendant with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (Dkt. #94 at pp. 2–3). The Superseding Indictment omitted Defendant from the other counts (*See* Dkt. #94 at pp. 1–5).

On June 11, 2007, Defendant appeared, with counsel, before Judge Bush and pleaded guilty to Counts One and Two of the Superseding Indictment (Dkt. #243). Three days later, Judge Bush issued a Finding of Facts and Recommendation on Guilty Plea, recommending that the district

court accept Defendant's guilty plea (Dkt. #260 at p. 2). On June 22, 2007, Judge Schell adopted the recommendation (Dkt. #265).[1] On September 27, 2007,[2] Judge Schell sentenced Defendant to 322 months imprisonment—262 months for Count One and 60 months for Count Two—and supervised release of five (5) years (Dkt. #345 at pp. 2–3).

On May 14, 2015, Defendant filed his Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) based on the 2014 retroactive amendment to the sentencing guidelines (Dkt. #458 at pp. 1–2). On May 25, 2016, the Court granted Defendant's Motion, reducing his sentence from 322 months to 270 months imprisonment and supervised release of five (5) years (*See* Dkt. #470; Dkt. #345).

On January 17, 2024, Defendant filed this Motion based on "extraordinary and compelling" reasons, including: (1) an unusually long sentence; (2) his "meritorious post-rehabilitation efforts"; (3) he has served the lion's share of his sentence; and (4) the "extremely restrictive conditions[,]" resulting from the COVID-19 pandemic (*See* Dkt. #501 at pp. 5–11). In addition, Defendant asks this Court to consider factors such as his clean disciplinary history, low likelihood of recidivism, and a sentencing disparity compared to his co-defendants (Dkt. #501 at pp. 12–17). Ultimately, Defendant petitions the Court to reduce his sentence to time served, followed by five (5) years of supervised release (Dkt. #501 at pp. 13–14). At this time, Defendant has served about 222 of the 270 months of his sentence. The Government did not respond to the Motion.

---

[1]  Judge Schell signed the Order on June 22, 2007 (Dkt. #265). The Order, however, was docketed on June 25, 2007 (*See* Dkt. #265).

[2]  The date of the Imposition of Judgment is September 27, 2007 (Dkt. #345 at p. 1). Judge Schell signed, and the Clerk docketed, the Judgment on September 28, 2007 (*See* Dkt. #345 at p. 1).

## LEGAL STANDARD

**I.**    **18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>> (i)    extraordinary and compelling reasons warrant such a reduction; or

>> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[3]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the

---

[3]  This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.   Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[4] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a

---

[4]   The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III. U.S.S.G.'s Policy Statement

### A. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient.

*See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of

7

serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[5] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,*

---

[5] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[6] the United States Centers for Disease Control and Prevention,[7] and the U.S. Federal Government,[8] have made clear that the COVID-19 pandemic has ended.[9] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G.

---

[6] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[7] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[8] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[9] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

§ 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with

medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a

conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

**IV.    The 18 U.S.C. § 3553(a) Factors**

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[10] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

## I.    Defendant satisfies § 3582(c)(1)(A)'s exhaustion requirement.

As a threshold matter, the Court first addresses the exhaustion requirement. As outlined in § 3582(c)(1)(A), "a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)).

Defendant provides no evidence that he exhausted his administrative remedies before filing this Motion (*See* Dkt. #501). The exhaustion requirement, however, can be waived. *McLean*, 2022 WL 44618, at *1. Here, the Government has not responded to Defendant's Motion; any argument

---

[10] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

that he failed to exhaust his administrative remedies, then, is deemed waived. *Id.* at *2. Thus, the Court will next address the merits of the Motion.

## II.    Defendant does not prove "extraordinary and compelling" reasons warrant a sentence reduction.

Turning to Defendant's Motion, his request for compassionate release mainly falls under U.S.S.G. §§ 1B1.13(b)(5) and (6). Defendant's argument fails because his conditions are insufficiently severe to constitute "extraordinary and compelling" reasons warranting a sentence reduction under § 3582(c)(1)(A)(i). Defendant's claim for compassionate release turns on, among other things, multiple arguments that he was given an unusually long sentence, multiple 18 U.S.C. § 3553(a) factors, and the "extremely restrictive conditions" resulting from the COVID-19 pandemic (Dkt. #501 at pp. 8–10). When combined, Defendant asserts these factors constitute "extraordinary and compelling" reasons to justify his sentence reduction (Dkt. #501 at pp. 8–10). They do not.

### A.    Defendant's Alleged Unusually Long Sentence

Defendant claims he would have received a lesser sentence today if he were convicted for the same crime he was charged with (Dkt. #501 at pp. 4–8). He makes four (4) main arguments in support: (1) a conviction for Conspiracy to Possess a Controlled Substance with Intent to Distribute does not qualify as a federal drug trafficking offense; thus, there is no predicate offense to support a conviction for Possession of a Firearm in Furtherance of a Drug Trafficking Crime; (2) if sentenced today under the Department of Justice's current policy, he is not subject to a mandatory minimum sentence; (3) if sentenced today, his Criminal History Category would be I instead of II; and (4) the Supreme Court's ruling in *Dean v. United States* authorizes a district court to impose a non-guideline sentence for the predicate offense when a defendant is also convicted of

a violation under 21 U.S.C. § 924(c) (Dkt. #501 at pp. 5–11, 15). *Dean v. United States*, 581 U.S. 62 (2017). In addition to his sentence's length, Defendant also asks this Court to consider the following factors when making its "extraordinary and compelling" inquiry: (5) an alleged sentencing disparity with his co-defendants; (6) his history and characteristics, including his clean disciplinary history, low likelihood of recidivism, and "meritorious post-rehabilitation efforts;" (7) that he has served the lion's share of his sentence; and (8) the "extremely restrictive conditions[,]" resulting from the COVID-19 pandemic (Dkt. #501 at pp. 11–17). The Court will address argument (7) when it considers the § 3553(a) factors.

        1.       Defendant's Change In Law Argument

The Court addresses arguments (1) through (4) together, in that order. In effect, Defendant tries to show there are changes in law that produce a gross disparity between the sentence he is serving and the sentence he might receive if sentenced today. There are not changes in the law.

First, Defendant claims a conviction for Conspiracy to Possess a Controlled Substance with Intent to Distribute does not qualify as a federal drug trafficking offense; thus, there is no predicate offense to support a conviction for Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Dkt. #501 at pp. 5–6). In support, Defendant cites the Tenth Circuit case *United States v. Martinez-Cruz* and the Fourth Circuit case *United States v. Norman*, (Dkt. #501 at pp. 5–6). These cases, however, do not corroborate this position. *See United States v. Martinez-Cruz*, 836 F.3d 1305, 1307–08, (10th Cir. 2016) (focusing on a discrete definitional conflict of "conspiracy" between 21 U.S.C. § 846 and Application Note 5 to U.S.S.G. § 2L1.2); *see also United States v. Norman*, 935 F.3d 232, 234–35 (4th Cir. 2019) (focusing on a discrete definitional conflict of "controlled substance offense" between 21 U.S.C. § 846 and U.S.S.G. § 2k2.1(a)(4)(A)). Both cases deal specifically with whether a previous federal drug trafficking conviction qualifies for enhancement

under the Guidelines and neither case concerns § 924. *Martinez-Cruz*, 836 F.3d at 1307–08; *Norman*, 935 F.3d 232 at 234–35. To illustrate, *United States v. Claycomb*—which Defendant relies on in his discretion argument—cuts against this position. *See United States v. Claycomb*, No. 2:07-CR-00196-NDF-5, Dkt. #963 at p. 4 (D. Wyo. July 18, 2022). The *Claycomb* court ruled that a "conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 is clearly a federal drug trafficking crime under § 924(c)'s definition . . . ." *Id.* So to here. Defendant's conviction does qualify as a federal drug trafficking offense. As such, the Court finds that this argument lacks merit; thus, it is not an "extraordinary and compelling" reason to support release.

Second, Defendant asserts that the December 16, 2022, Memorandum for All Federal Prosecutors established a no-mandatory-minimum-sentence policy for federal prosecutors in similar cases (Dkt. #501 at pp. 10–11, 36–42). Defendant claims that under this Department of Justice policy, a prosecutor would not file charges containing mandatory minimum sentences against defendants; thus, if he was sentenced today, he would be sentenced to 240 months instead of 270 months of imprisonment (Dkt. #501 pp. 10–11). Yet the Memorandum provides that the policies "are intended solely for the guidance of attorneys for the government[,]" "are not intended to create a substantive or procedural right or benefit[] enforceable at law," and "may not be relied upon by a party to litigation with the United States" (Dkt. #501 at pp. 42 n.2). More importantly, a general policy statement is not law because a statement of policy merely proclaims what an agency seeks to establish as policy. *Cf. Pros. & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595–96 (5th Cir. 1995). Accordingly, the Court finds this argument does not satisfy the

change in law requirement; therefore, it is not an "extraordinary and compelling" reason that supports Defendant's release.

Third, Defendant argues that if he was sentenced today, his Criminal History Category would now be Category I instead of II (Dkt. #501 at p. 15). Defendant reasons that today his prior state convictions are now over fifteen (15) years or are subject to the ten (10) year statute of limitations periods outlined in U.S.S.G. § 4A1.2(e)(1) (Dkt. #501 at p. 15). According to Defendant, the recommended sentencing range is 188 to 235 months of imprisonment (Dkt. #501 at p. 15). Even assuming this is true, the Court reduced Defendant's sentence to 210 months for Count One, which is within both Offense Level 36, Category I and II (Dkt. #470). *See* U.S.S.G. Ch. 5, Pt. A. Regardless, this is not a change in law. Here, Defendant simply asserts the facts today are different than before, and he furnishes no legal authority where a court found this proposition as a change in law. More dooming, U.S.S.G. § 4A1.2(e)(1)'s plain language contradicts Defendant's position. The provision's plain language defines the applicable time period is based on the "defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(1); *cf. United States v. Calleros-Corral*, No. 24-10472, 2025 WL 48411, at *1 (5th Cir. Jan. 8, 2025) (holding the district court did not err in calculating the defendant's guidelines range when his 1987 conviction was within 15 years of the commencement of his offense in January 22, 2000—despite the defendant evading arrest until August 2022). As such, the Court finds this position does not satisfy the change in law requirement. Thus, it is not an "extraordinary and compelling" reason to support Defendant's release.

Finally, Defendant asserts that the Supreme Court's ruling in *Dean v. United States* authorizes a district court to impose a non-guideline sentence for the predicate offense when a

defendant is also convicted of a violation under 21 U.S.C. § 924(c) (Dkt. #501 at pp. 7–8). *Dean*, 581 U.S. at 69–70. Specifically, Defendant contends if he was sentenced today, in wake of *Dean*, "the Court could impose a federal sentence substantially lower than . . . 210[] months of imprisonment as to Count One" (Dkt. #501 at pp. 7–8). This does not constitute a change in law. The Court already had discretion not to follow the Guidelines prior to Defendant's sentencing. *Gall*, 552 U.S. at 46 (summarizing that because of the Court's decision in *United States v. Booker*, the Guidelines are now advisory). Simply because, as Defendant asserts, a district court "could" sentence Defendant to one (1) day for Count One and five (5) years for Count Two, does not change the fact that the Court possessed the authority to sentence him below the Guideline recommendation in the first place. In conclusion, the Court finds this argument does not constitute a change in law. Accordingly, it is not an "extraordinary and compelling" reason to support Defendant's release.

        2.    Defendant's additional factors fail to constitute "extraordinary and compelling" reasons supporting his release.

The Court addresses Defendant's arguments (5), (6), and (8) together. Defendant attempts to show that these other factors constitute "extraordinary and compelling" reasons supporting compassionate release. Once again, they do not.

First, Defendant asserts that the disparity in sentencing with his co-defendants supports his compassionate release. He claims the following sentences were given:

1. Defendant was sentenced to 322 months imprisonment; later reduced to 270 months.
2. Ricardo Perez, Jr. was sentenced to 120 months imprisonment.
3. Josue Flores-Piedra was sentenced to 262 months imprisonment; later reduced to 210 months.
4. Jose Benitez was sentenced to 87 months imprisonment.

19

5.  Michael Paul Mynar was sentenced to 215 months imprisonment; later reduced to 180 months.

6.  Curt Wayne James was sentenced to 61 months imprisonment

7.  Orlando Rodriguez was sentenced to 135 months imprisonment.

8.  Jimmy Joe Perez was sentenced to 120 months imprisonment.

9.  Clemente Valdez-Piedra was sentenced to 168 months imprisonment.

10. Jose Ortega Lopez was sentenced to 135 months imprisonment.

11. Luis Rangel Frias was sentenced to 180 months imprisonment.

12. Zulema Garza Brooks was sentenced to 21 months imprisonment.

(Dkt. #501 at pp. 15–17).

Specifically, Defendant asserts that he received sixty (60) months more than Flores-Piedra and almost twice the sentence of any other co-defendant (Dkt. #501 at p. 17). As such, he believes this unwarranted sentencing disparity violates § 3553(a)(6) and weighs in favor of reducing his sentence (Dkt. #501 at pp. 15–17). This argument also falls flat. First, Flores-Piedra was convicted for Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine, but, unlike Defendant, Flores-Piedra was not convicted for a violation under § 924(c) (Dkt. #390; Dkt. #345). Both Defendant and Flores-Piedra received the same initial sentence of 262 months for their conspiracy convictions, and both sentences were later reduced to 210 months imprisonment (Dkt. #390; Dkt. #345; Dkt. #472; Dkt. #470). In the end, this sentencing discrepancy between Defendant and Flores-Piedra is simply Defendant's additional § 924(c) conviction (*See* Dkt. #345 at p. 1). Second, Ricardo Perez, Jr., Benitez, James, Frias, and Brooks's convictions are distinguishable from Defendant's. In contrast, Ricardo Perez, Jr, Benitez, James, and Frias pleaded guilty for lower amounts of Methamphetamine than Defendant (Dkt. #273; Dkt. #274; Dkt. #374; Dkt. #169; Dkt. #321; Dkt. #239; Dkt. #348; Dkt. #206; Dkt. #309). Even more, unlike Defendant,

20

Brooks was convicted for Misprision of a Felony in violation of 18 U.S.C. § 4—not Conspiracy to Possess with the Intent to Manufacture and Distribute (Dkt. #306 at p. 1; Dkt. #345 at p. 1). Defendant fails to show he received a disproportionate sentence compared to his co-defendants; thus, the Court finds this argument weighs against Defendant's release.

Second, Defendant asserts his history and characteristics, including his clean disciplinary history, low likelihood of recidivism, and "meritorious post-rehabilitation efforts[,]" support his compassionate release (Dkt. #501 at pp. 11–15). These arguments also ring hollow. Defendant's first argument of maintaining "clear conduct" for the past several years is unsubstantiated and is insufficient to constitute an extraordinary and compelling reason warranting a sentence reduction (*See* Dkt. #501 at p. 12). *Cf. United States v. Broadus*, No. 3:10-CR-183-B-1, 2020 WL 4784686, at * (N.D. Tex. Aug. 18, 2020) ("Without more evidence, such as prisoner or officer affidavits, the Court will not use [Defendant's] allegations as evidence favoring compassionate release."). Next, in considering Defendant's rehabilitation efforts, Defendant shows he has completed many educational courses since his imprisonment, including earning his GED (Dkt. #501 at pp. 12–13; Dkt. #501 at p. 44). Yet rehabilitation alone cannot support a claim for sentence reduction, but it may be considered "in conjunction with other factors" in evaluating whether "extraordinary and compelling reasons" exist. *See Jean*, 108 F.4th at 284 (stating that "Congress did not prohibit district courts from considering rehabilitation in conjunction with other factors"). In taking other factors into consideration, this Court finds Defendant's rehabilitation efforts and post-release plans do not support his Motion. Notably, Defendant furnished no evidence he has excellent work evaluations nor any employment guarantee from Mesquite Glass. Accordingly, this Court finds these arguments weigh against Defendant's release.

Finally, Defendant requests for the Court to consider the COVID-19 pandemic when making its "extraordinary and compelling" inquiry (Dkt. #501 at pp. 8–9). He alleges he experienced "extremely restrictive conditions" resulting from the COVID-19 pandemic including long-term shutdowns, non-daily showers, cold food, deprivation of adequate medical treatment, denial of proper cleaning solutions, and limited recreation and library time (Dkt. #501 at pp. 8–9). However, the Fifth Circuit is reluctant to grant compassionate release based on COVID-19 concerns. *Rodriguez*, 27 F.4th at 1098–1101 (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, since the pandemic has ended, it is difficult to see how the COVID-19 pandemic could now be the basis for compassionate release. *See United States v. Gonzalez*, No. 4:19-CR-160-SDJ, 2025 WL 254112, at *4 (E.D. Tex. Jan. 21, 2025). Accordingly, the Court finds that the COVID-19 pandemic does not constitute an "extraordinary and compelling" reason supporting Defendant's release.

## III.    The 18 U.S.C. § 3553(a) factors do not support Defendant's Motion for Reduction of Sentence.

Even if "extraordinary and compelling" reasons existed, the sentencing factors under 18 U.S.C. § 3553(a) support denying Defendant's Motion. Under § 3553(a)(2)(A), the Court must address the seriousness of Defendant's offense, respect for the law, and providing a just punishment. *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023). Defendant, along with numerous other defendants, was convicted of Conspiracy to Possess a Controlled Substance with Intent to Distribute Methamphetamine (Dkt. #345). In addition, Defendant was convicted of Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Defendant was then sentenced to 322 months in prison (Dkt. #345). For his part, Defendant entered a plea agreement, admitting to making an agreement to distribute and

possess 15 kilograms or more of a mixture of Methamphetamine or 1.5 kilograms or more of actual Methamphetamine and knowingly possessing multiple firearms in furtherance of the drug trafficking crime (Dkt. #244; Dkt. #245). Defendant also has three prior convictions: Attempted Murder, Failure to Identify, and Criminal Trespass; all three convictions are unrelated (Dkt. #338 at pp. 9–10).

Defendant claims his imprisonment of longer than seventeen (17) years satisfies the need to reflect on the seriousness of the offense, promote respect for the rule of law, and provide just punishment for the offense (Dkt. #501 at pp. 13–15). Thus, according to Defendant, the Court should reduce his sentence. Not so. Here, Defendant was sentenced to a total of 270 months imprisonment, which reflects the serious nature of his drug offense (Dkt. #345 at p. 1–2; Dkt. #470). This case is similar to *United States v. Villa*. In that case, Villa was convicted for Conspiracy to Possess with Intent to Distribute a lower volume of Methamphetamine and was found to have a leadership role. *Villa*, 2025 WL 746518, at *5. The *Villa* court found this factor weighed against Villa because releasing the defendant early fails to "reflect the seriousness of the offense," "promote respect for the rule of law," or "provide just punishment for the offense." *Id.* While Villa served a smaller percentage of her sentence, Defendant was convicted a drug offense and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Dkt. #345; Dkt. #245). Addressing the seriousness of Defendant's offense, respect for the law, and providing a just punishment, the Court finds that this factor weighs against Defendant's release.

After weighing the factors in 18 U.S.C. § 3553(a), the Court finds that granting Defendant's release would not reflect the seriousness of the offense, promote respect for the law, provide just

punishment for his offense, nor adequately deter criminal conduct or protect the public. *Chambliss*, 948 F.3d at 693. Accordingly, Defendant's Motion must be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Reduction in Sentence (Dkt. #501) is hereby **DENIED**.

   **IT IS SO ORDERED.**

   **SIGNED this 5th day of June, 2025.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

24